**STATE of Missouri, Respondent,**

v.

**Vincent BELTON, Appellant.**

**No. WD 61478.**

Missouri Court of Appeals, Western District.

June 24, 2003.

Nancy A. McKerrow, State Public Defender Office, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, John Munson Morris and Karen L. Kramer, Office of Attorney General, Jefferson City, for Respondent.

PAUL M. SPINDEN, Judge.

Vincent Belton appeals from the circuit court's judgment in which he was convicted of resisting arrest and of possessing more than five grams of marijuana with the intent to distribute it. Belton asserts that the state did not present sufficient evidence to convict him of either offense. We disagree and affirm the circuit court's judgment.

The state's charges grew out of an incident on January 14, 2001, involving a car in which Belton was a passenger. As the car traveled east on I–70, Corporal Brian Hagerty of the Missouri Highway Patrol saw it repeatedly cross the fog and center lines. Hagerty turned on his patrol car's emergency lights and pursued the car.

Before the car stopped, Hagerty saw Belton throw several plastic bags from the car's window.

After the car parked on the highway's shoulder, Hagerty walked to Belton's door and told Belton that he was under arrest for littering. Hagerty ordered him to get out of the car, and he did. Hagerty bound his wrists with handcuffs.

Hagerty explained to the car's driver, Belton's wife Felicia Belton, why he had stopped her travel and asked to see her driving license. He told her that Belton was under arrest. Belton, in the meantime, sat down on the car's front seat. Hagerty ordered him to get out of the car, but he refused. As Hagerty attempted to pull him from the car, Belton's wife drove the car away rapidly. The car's sudden acceleration caused the open passenger door to swing into Hagerty, knocking him back toward the car. The door post of the moving car hit Hagerty and knocked him into a ditch beside the highway.

After officers apprehended Belton and his wife, Hagerty returned to the area of the first stop and found two bags containing 820 grams of compressed marijuana. Hagerty identified them as the bags that Belton had thrown from the car.

The state charged Belton with the Class B felony of possessing more than five grams of marijuana with the intent to distribute it, the Class A misdemeanor of resisting arrest, the Class B felony of assault of a law enforcement officer in the second degree, and the Class A misdemeanor of littering. The jury found Belton guilty of all of the offenses except for assaulting a law enforcement officer.

In his first point on appeal, Belton argues that the circuit court erred in overruling his motion for judgment of acquittal on the charge of resisting arrest. He asserts two arguments: that his wife, not he, caused the car to hit Hagerty during the arrest, and that he was already under arrest at the point he exerted any resistance.

■ Rule 27.07(a) says, "The court on motion of a defendant ... shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses." In reviewing a claim of insufficient evidence, we give great deference to the fact-finder's decision by accepting as true all evidence favorable to the state and by disregarding all contrary evidence. From that evidence we determine whether or not it was sufficient to give a reasonable juror a sound basis for finding the defendant guilty beyond a reasonable doubt. *State v. Escoe*, 78 S.W.3d 170, 172 (Mo. App.2002).

■ We agree that Belton's wife was the cause of the Beltons' car hitting Hagerty. This, however, overlooks Belton's actions in ignoring Hagerty's orders to get out of the car and his resisting Hagerty's attempts to pull him from the car.

In § 575.150.1, RSMo 2000, the General Assembly declared:

A person commits the crime of resisting ... arrest, ... if, knowing that a law enforcement officer is making an arrest, ... for the purpose of preventing the officer from effecting the arrest, ... the person:

(1) Resists the arrest ... by using or threatening the use of violence or physical force or by fleeing from such officer[.]

Belton does not contend that he was unaware that Hagerty was arresting him. The only issues are whether Belton used "physical force" against Hagerty for the

purpose of preventing Hagerty from arresting him.

This is somewhat of a case of first impression for Missouri. We have not found any cases matching the facts of this case. Belton did not threaten Hagerty. The only force that he used was to exert sufficient resistance to keep Hagerty from pulling him from the car.

The state relies on three cases, *State v. Merritt*, 805 S.W.2d 337 (Mo.App.1991) (defendant hit officer with truck), *State v. Feagan*, 835 S.W.2d 448 (Mo.App.1992) (defendant threatened force and stiffened arms when officer tried to put handcuffs on his wrists), and *State v. Reynolds*, 723 S.W.2d 400 (Mo.App.1986) (defendant yanked arm from officer, hitting officer). These cases are distinguishable. The *Merritt* case is closest in facts because it involved a defendant hitting an officer with a truck as the defendant attempted to elude arrest by driving from the scene. The case does not aid the state, however, because Felicia Belton—not Vincent Belton—drove the car, and the state did not present any evidence that Vincent Belton encouraged her in any way to drive the car from the scene. Unlike the defendant in *Feagan*, Belton did not threaten to use force against the arresting officer. He may have stiffened his body as Hagerty tried to pull him from the car, but he did not make any threats of force as the defendant in *Feagan* did. Unlike the defendant in *Reynolds*, Belton did not yank his arm in a way that resulted in the arresting officer's getting hit.

Closer in facts to Belton's case is a decision by the Court of Appeals of Indiana in *McCaffrey v. Indiana*, 605 N.E.2d 241 (Ind.App.1992). In that case, officers found the defendant intoxicated and lying in a street gutter. The defendant ignored the officers' repeated demands that he stand, so they arrested him. Because he would not stand, the officers carried him to their squad car and drove him to the local jail. There, he refused to get out of the car. Officers had to pull him from the car and carry him into the jail. Authorities charged the defendant with "resisting law enforcement" under an Indiana statute that prohibited "forcibly resist[ing], obstruct[ing], or interfer[ing] with a law enforcement officer ... while the officer is lawfully engaged in the execution of his duties as an officer[.]" *Id.* at 243. The *McCaffrey* court acknowledged that "use of force is an essential element of resisting law enforcement.... Therefore, the State must show [that the defendant] either forcibly resisted, forcibly obstructed or forcibly interfered with a law enforcement officer engaged in the execution of his duties." *Id.* After consulting a dictionary definition of "force," the *McCaffrey* court concluded that the defendant had used "force" by refusal to get out of the squad car and requiring officers "to use extraordinary effort to remove him from the car to effectuate his lawful arrest." *Id.*

Also noteworthy is the unpublished opinion of *State of Wisconsin v. Maier*, 1995 WL 215510, 1995 Wisc.App. LEXIS 465 (Wis.App.1995). In that case, officers endeavored to arrest the defendant by handcuffing him. The defendant thwarted their efforts by refusing to allow officers to pull his hands behind his back for handcuffing. The officers used force—"a compliance hold"—to persuade the defendant to let the officers pull his hands to his back for handcuffing. The state charged the defendant with "resisting an officer." Force was an essential element of the crime. The Wisconsin court concluded that "[t]he jury could easily conclude that when [the defendant] was ... requiring the officers to struggle with him in an attempt to get his arms out, and not allow-

ing either arm to be taken back, he opposed force with force. In short, the evidence supports the jury's conclusion that he resisted an officer." *Id.*

■ As was the case with the Indiana statute, the General Assembly did not define "physical force" in § 575.150.1. In the absence of a statutory definition, "the words used in the statute will be given their plain and ordinary meaning as derived from the dictionary." *State v. Eisenhouer,* 40 S.W.3d 916, 919–20 (Mo. banc 2001). "Force" is "power, violence, compulsion, or constraint exerted upon or against a person or thing[.] ... FORCE is a general term for exercise of strength or power, esp[ecially] physical, to overcome resistance[.] ... [T]o press, drive, attain to, or effect as indicated against resistance or inertia by some positive compelling force or action." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 887 (1971). This was the same definition that the *McCaffrey* court employed in concluding that the defendant in that case had "forcibly resist[ed]" a law enforcement officer's execution of his duties. 605 N.E.2d at 243.

■ In § 575.150.1, the General Assembly declared that resisting arrest was a crime if the person being arrested resisted by one of five separate means: using violence, threatening to use violence, using physical force, threatening to use physical force, or by fleeing. All of a statute's words presumptively have separate and individual meanings. "It is presumed that the legislature intended that every word ... of a statute have effect. Conversely, it will be presumed that the legislature did not insert idle verbiage or superfluous language in a statute." *Hyde Park Housing Partnership v. Director of Revenue,* 850 S.W.2d 82, 84 (Mo. banc 1993). By sepa-

rately listing "violence" and "physical force," the legislature obviously intended for "physical force" to include nonviolent force. To conclude otherwise would render "physical force" mere surplusage.

The state presented evidence that Belton exerted physical force. Hagerty testified that he tried to pull Belton from the car and could not. The jury could have reasonably concluded that Belton used physical force in resisting Hagerty's arrest by exerting the strength and power of his bodily muscles to overcome Hagerty's attempts to pull him from the car. Because of Belton's use of forceful constraint against Hagerty's force, Hagerty could not remove him from the car before Felicia Belton's swift departure. This was sufficient evidence from which the jury could have concluded reasonably that Belton was guilty of violating § 575.150.1.

Belton also argues that he his arrest was complete when Hagerty handcuffed him; therefore, any resistance on his part came after the arrest. He refers us to *State v. Shanks,* 809 S.W.2d 413, 418 (Mo.App. 1991), in which this court's eastern district said that "it is logical to require that[,] for a valid conviction of resisting arrest pursuant to § 517.150 ..., the arrest must be *in progress* when the 'resistance' occurs. Once the arrest has been fully effectuated a defendant should be considered to be in custody."[1] We agree with *Shanks* that one cannot be deemed to have resisted arrest if the arrest is not in progress, but Belton is considering "arrest" too narrowly.

"Arrest" is susceptible to more than one definition, depending on its context. In the context of resisting arrest, the General Assembly's definition in § 544.180, RSMo 2000, provides useful guidance. *Feagan,* 835 S.W.2d at 449. That definition is:

---

1. Emphasis was in the original.

An arrest is made by an actual restraint of the person of the defendant, or by his submission to the custody of the officer, under authority of a warrant or otherwise. The officer must inform the defendant by what authority he acts, and must also show the warrant if required.

In *Shanks*, the court determined that the arrest was effectuated when an officer had bound the defendant with handcuffs and had secured him in his patrol car. *Shanks*, 809 S.W.2d at 418.

Hagerty had not progressed that far in arresting Belton. While Hagerty was attempting to arrest Belton, Belton refused to heed Hagerty's command to get out of the car. Hagerty was trying to pull Belton from the car when his wife drove the car away. Hagerty obviously did not have Belton restrained, and he had not submitted to Hagerty's custody. Hagerty had not completed the arrest when Belton's resistance occurred.

In his second point, Belton argues that the circuit court erred in overruling his motion for judgment of acquittal for possessing marijuana with the intent to distribute it. Belton asserts that the state's evidence did not prove that he had actual or constructive possession of the marijuana that he threw from the car's window.

To convict a person of possessing a controlled substance, the state must prove that the person had conscious and intentional possession of the substance, either actual or constructive, and was aware of the substance's presence and nature. *State v. Berry*, 54 S.W.3d 668, 675 (Mo. App.2001). If the state proves possession, the jury is free to infer the intent to distribute from the quantity of drugs found in a form unsuitable for immediate use. *State v. Fairow*, 991 S.W.2d 712, 714 (Mo.App.1999). A person has actual pos-

session of a substance if it is within easy reach and convenient control. Section 195.010(32), RSMo; *State v. Rollett*, 80 S.W.3d 514, 521 (Mo.App.2002).

Belton had actual possession. He was convicted of littering with the bags that contained 820 grams of marijuana. That Belton possessed the bags is beyond dispute because he does not challenge his conviction of littering with the bags.

In *State v. Camerer*, 29 S.W.3d 422 (Mo. App.2000), an occupant of a car threw a backpack containing ingredients used to manufacture methamphetamine from a vehicle's window before an officer stopped it. In responding to the defendant's claim of insufficient evidence to prove possession beyond a reasonable doubt, the *Camerer* court said, "Obviously, if the evidence was sufficient to support a finding that Appellant was the person who tossed the backpack from the pickup, the evidence was sufficient to support a finding that she had the backpack within easy reach and convenient control." *Id.* at 425.

The same is true of Belton's case. Because the evidence was sufficient to convict Belton of littering with the bags containing the marijuana, it was sufficient to support a finding that he had the bags within easy reach and control. He could not have discarded them otherwise. He had actual possession, and we affirm this portion of the circuit court's judgment.

We, therefore, conclude that the circuit court did not err in its judgment convicting Belton of resisting arrest and possessing marijuana with an intent to distribute it. We affirm the circuit court's judgment.

LISA WHITE HARDWICK, Presiding Judge, and PATRICIA A. BRECKENRIDGE, Judge, concur.